■ London Terrace Gardens, Appellant, v Various Tenants, Respondent. [670 NYS2d 480] —Order of the Appellate Term of the Supreme Court, First Department (McCooe, J. P., Freedman and Davis, JJ.), entered September 27, 1996, which affirmed an order of the Civil Court, New York County (Saralee Evans, J.), entered on or about February 15, 1996, granting respondent Various Tenants' motion to release escrow funds to

them and denied petitioner's cross-motion for release of the funds to it based on a finding that petitioner failed to comply with a January 31, 1994 stipulation settling non-payment proceedings, unanimously reversed, on the law and the facts, without costs or disbursements, the motion denied and the cross-motion granted.

An agreement made in 1950 between petitioner, the owner and operator of London Terrace Gardens, and London Terrace Towers Owners, Inc., now a cooperative apartment corporation and non-party, which owns a neighboring housing complex known as London Towers, gave the respondent tenants, various tenants at London Terrace Gardens, "equal rights to use" the swimming pool located at London Terrace Towers. According to the agreement, each party could set rules regarding its own facilities "provided that no preference shall be given in any such terms and conditions to the tenants of properties owned by such party as against the tenants of the properties owned by the other party." This agreement was extended in 1960.

In 1991, Towers sought to renegotiate the $5,500 annual fee paid by Gardens since 1950 for its tenants' use of the pool. When an agreement could not be reached, Towers terminated the pool agreement, thereby terminating the use of the pool by Gardens' tenants. In February 1993, 63 of Gardens' tenants began withholding rent, prompting the commencement of non-payment proceedings in which were interposed answers alleging breach of warranty of habitability and failure to maintain services. The parties settled these proceedings by a "so ordered" stipulation, the interpretation of which is the subject of this appeal.

Insofar as is relevant, the stipulation provides, "If [Gardens] shall once again have an agreement with the [Towers] that provides to all tenants who reside at [Gardens] access to the pool and sun deck for at least a minimum period of ten years, in the same manner and upon the same terms and conditions as were available prior to the time they were denied the use thereof, [Gardens] shall receive * * * $52,500" in rent, which was being held in escrow. The stipulation further provided that "any amount to which [Gardens] is no longer potentially entitled may be withdrawn and distributed to the [tenant] respondents." Petitioner and the respondent tenants now assert conflicting claims to the $52,500, the tenants asserting that Gardens has failed to comply with the stipulation's terms.

In 1994, less than one month after execution of the stipulation, Towers and Gardens entered into an agreement providing

the Gardens' tenants with "reasonable access" to the pool and deck for at least 10 and possibly 20 years. The tenant respondents, however, claim that the agreement does not contain the equal access and no preference provisions of the 1950 and 1960 agreements. They also argue that the hours of the pool's availability have been substantially reduced under the 1994 agreement, which provides for a minimum daily availability of the pool of 7.25 hours each weekday except Wednesday and 5 hours each day on Saturdays and Sundays. In our view, neither argument has merit. Accordingly, we reverse the order granting the tenants' motion to release the $52,500 in escrow funds to them and grant the cross-motion for the release of said funds to Gardens.

Although the 1994 agreement does not expressly contain the equal access and no preference provisions of the 1950 and 1960 agreements, it does not differentiate between Gardens' and Towers' residents when it speaks of reasonable access and sets forth the minimum hours of pool availability. Neither the respondent tenants nor the Civil Court or Appellate Term, which ruled in tenants' favor, cite any provision in the 1994 agreement that specifically provides for disparate access. Furthermore, under the 1994 agreement, after Towers' threshold responsibility for the first $2,500 per year is met, "[Towers] and Gardens shall contribute equally" to the maintenance of the pool. The agreement requires that Gardens be consulted before any maintenance expense determinations are made. Finally, since the 1994 agreement went into effect, Gardens' tenants have enjoyed equal pool access at double the minimum hours provided therein and at a rate comparable to 1992, when they were denied access. Thus, in our view, the 1994 agreement is, as a matter of law, rife with the implication that it does, indeed, provide equal access. Concur—Sullivan, J. P., Milonas, Rubin and Tom, JJ.